SCANNED at 13U
and Emailed
6/10/20 by tw   14 pages
date    initials    No.

United States District Court
District of Connecticut

James A. Harnage
Inmate # 149472
50 Nunnawauk Rd
Newtown, CT. 06470

Civil No.: unassigned

Dated: 6/8/2020

vs

Amondah Hannah
50 Nunnawauk Rd
Newtown, CT. 06470

Gerald Valletta
50 Nunnawauk Rd.
Newtown, CT. 06470

Cynthia Nadeau
50 Nunnawauk Rd.
Newtown, CT. 06470

Adrianna DeBarros
50 Nunnawauk Rd.
Newtown, CT. 06470

David Giles
263 Farmington Ave
Farmington, CT. 06030

Omprekash Pillai
1153 East St. south
Suffield, CT. 06080

Syed Johar Naqvi
1153 East St. south
Suffield, CT. 06080

Heidi Greene
1153 East St. south
Suffield, CT. 06080

Tawanna Furtick
1153 East St. south
Suffield, CT. 06080

Cheryl Spano-Lonis
1153 East St. South
Suffield, CT. 06080

Erin Doyle
1153 East St. South
Suffield, CT. 06080

Robert Bonnetti
1153 East St. South
Suffield, CT. 06080

Lisa Candelario
1153 East St. South
Suffield, CT. 06080

Cynthia L'Hereaux
286 Norwich-New London Tpk.
Uncasville, CT. 06382

Janine Brennan
286 Norwich-New London Tpk.
Uncasville, CT. 06382

Jane Doe
286 Norwich-New London Tpk.
Uncasville, CT. 06382

Plaintiff:

1. At all times herein mentioned the plaintiff, James A. Harnage (Harnage), is and was an inmate, #149472, incarcerated within and for the state of Connecticut (the state) in the custody and care of the Department of Correction (D.O.C.).

Defendants:

2. At all times herein mentioned the defendant, Amondah Hannah (Hannah), is and was a Correctional Officer (c.o.), holding rank, duties and obligations as Warden at the Garner Correctional Institute (Garner).

3. At all times herein mentioned the defendant, Gerald Valletta (Valletta), is and was a medical staff member providing medical care to inmates, at Garner, as a doctor; and is sued herein in an individual and official capacity.

4. At all times herein mentioned the defendant, Cynthia Nadeau (Nadeau), is and was a medical staff member, at Garner; providing medical care services to inmates, as a Nurse; and is sued herein in an individual and official capacity.

5. At all times herein mentioned the defendant, Adrianna DeBarros (DeBarros), is and was a medical staff member, at Garner; providing medical care services to inmates, as a Nurse; and is sued herein in an individual and official capacity.

6. At all times herein mentioned the defendant, David Giles (Giles), is and was a medical staff member providing medical services to inmates, as a doctor; and is sued herein in an individual and official capacity.

7. At all times herein mentioned the defendant, Omprekash Pillai (Pillai), is and was a medical staff member providing medical care services to inmates, at the MacDougall Correctional Institute (MacDougall), as a doctor; and is sued herein in an individual and official capacity.

8. At all times herein mentioned the defendant, Syed Johar Naqvi (Naqvi), is and was a medical staff member providing medical care services to inmates, at MacDougall, as a doctor; and is sued herein in an individual and official capacity.

9. At all times herein mentioned the defendant, Heidi Greene (Greene), is and was a medical staff member providing medical care services

to inmates, at MacDougall, as a nurse; and is sued herein in an individual and official capacity.

10. At all times herein mentioned the defendant, Tawanna Furtick (Furtick), is and was a medical staff member providing medical care services to inmates, at MacDougall, as a nurse; and is sued herein in an individual and official capacity.

11. At all times herein mentioned the defendant, Cheryl Spano-Lonis (Spano-Lonis), is and was a medical staff member providing medical care services to inmates, at MacDougall, as a nurse; and is sued herein in an individual and official capacity.

12. At all times herein mentioned the defendant, Erin Poyle (Poyle), is and was a medical staff member providing medical care services to inmates, at MacDougall, as a nurse; and is sued herein in an individual and official capacity.

13. At all times herein mentioned the defendant, Robert Bonnetti (Bonnetti), is and was a medical staff member providing medical care services to inmates, at MacDougall, as a nurse; and is sued herein in an individual and official capacity.

14. At all times herein mentioned the defendant, Lisa Candelario (Candelario), is and was a medical staff member providing medical care services to inmates, at MacDougall, as a nurse; and is sued herein in an individual and official capacity.

15. At all times herein mentioned the defendant, Cynthia L'Hereaux (L'Hereaux) is and was a medical staff member providing medical care services to inmates, at the Corrigan Correctional Institute

4

(Corrigan), as a nurse; and is sued herein in an individual and official capacity.

16. At all times herein mentioned the defendant, Janine Brennan (Brennan), is and was a medical staff member providing medical care services to inmates, at Corrigan, as a nurse, and is sued herein in an individual and official capacity.

17. At all times herein mentioned the defendant, Jane Doe (Doe), is and was a medical staff member providing medical care services to inmates, at Corrigan, as a nurse; and is sued herein in an individual and official capacity.

Count One:

1-18. Paragraphs numbering 1-17 of the foregoing are incorporated here by reference as if set forth at length and made part hereof this the First Count.

19. On or about September 2, 2015, Harnage underwent surgical correction of an abdominal mid-line hernia, at the hands of Giles; and remained hospitalized until September 5, 2015, at the Med-Surg 5, prison ward at the UConn Hospital, (the surgery).

20. Following the surgery, plaintiff suffered numerous complications, including, but not limited, to multiple different post-operative infections.

21. Plaintiff was returned to MacDougall, following the surgery, where he was housed at the time.

22. Plaintiff was monitored and received dressing changes as part of his recovery care, from defendants Furtick, Bonnetti, Candelario,

5

Doyle and Spano-Lonis.

23. These dressing changes were performed by MacDougall medical staff including, Bonnetti, Candelario, Spano-Lonis and Furtick, in the medical treatment area of MacDougall.

24. In the course of these dressing changes Harnage repeatedly informed defendants Bonnetti, Candelario, Spano-Lonis and Furtick that he was suffering from sharp tearing sensations in his abdomen generally, but, predominantly on the right side of his suture line and navel.

25. Neither of these defendants examined or palpatated plaintiff's abdomen to assess what or where the tearing sensations were occurring or why.

26. Plaintiff was concerned about these tearing sensations, which ranged on a pain scale between 6 and 9, out of ten(10); because they were exactly the same as the tearing sensations Harnage had experienced when his hernia occurred, and as it grew.

27. As part of plaintiff's surgery, an abdominal prosthetic mesh was implanted to repair Harnage's torn abdominal muscle.

28. In monitoring and treating plaintiff's recovery, defendants had a duty to treat and pay heed to any of the complications identified by Harnage and routinely examine any such concerns.

26. Instead, defendants Bonnetti, Candelario, Spano-Lonis and Furtick repeatedly ignored Harnage's concerns and told Harnage that the tearing sensations were part of the normal healing process for such procedures and that Harnage would "just have to get used to it."

27. As part of the post-operative care Harnage was seen by Dr. Giles, who relied on an inexperienced intern, Sreelakshmi Reddivari(Reddivari),

6

to perform a manual palpatation of plaintiff's surgical site, despite his clear knowledge of concerns for Harnage's right side of the surgical site.

28. When plaintiff informed Giles of his tearing sensations Giles affirmed the statements of Bonnetti, Candelario, Furtick and Spano-Louis that the sensations where a part of the normal recovery process.

29. Even after Harnage's infections, sutures and other physical symptoms of the surgery had healed, plaintiff continued to feel the extremely painful tearing sensations throughout his abdomen, and predominantly in the right of his suture and navel area, that Giles knew presented serious issues of concern.

30. On multiple occasions, Harnage was seen by Pillai and Naqvi for doctors visits regarding his numerous medical needs.

31. Pillai and Naqvi both told Harnage that it was normal for him to be experiencing these tearing sensations and that Harnage would just have to "deal with it".

32. In an argument with Naqvi over whether months into recovery the plaintiff should have tearing sensations, Naqvi stated "what ever it is, you will just have to live with it because we are not doing anything else to fix your abdomen."

33. Neither Giles, Pillai, Naqvi, Bonnetti, Candelario, Furtick or Spano-Louis could see into plaintiff's abdomen to ascertain the status of the surgical repair, or see any other conditions; without a diagnostic imaging testing.

34. Not one of the aforesaid defendants ordered any diagnostic imaging testing.

35. While at medical, Harnage saw Greene and Poyle and expressed his deep concerns, both of whom said they would look into it and never did.

7

36. On or about June 2016, plaintiff was transferred to the Corrigan Correctional Institute where he was under the care of Brennan, L'Hereaux and Doe.

37. Harnage was seen multiple times during sick call and doctors visits by Brennan, L'Hereaux and Doe, to address plaintiff's many medical issues; and Harnage repeatedly told defendants that he was experiencing severe and debilitating tearing sensations in his abdomen to the right side of his suture and navel, the recovery of which defendants knew existed great concern.

38. Neither Brennan or L'Hereaux ever examined Harnage's abdomen, Doe alone performed an exterior examination of plaintiff's abdomen, as Harnage touched the areas he was experiencing complications, to indicate their locations; but never palpatated plaintiff's abdomen.

39. Brennan, L'Hereaux and Doe could not possibly see inside the plaintiff's abdomen, to assess what complications were occurring without some form of diagnostic imaging testing.

40. Neither Brennan, L'Hereaux or Doe ordered any diagnostic imaging testing and remain deliberately indifferent to Harnage's medical complaints saying that his symptoms must be him "getting use to" the mesh, and that Harnage was "exaggerating" his symptoms for attention.

41. On one occasion, Brennan called Harnage a malingerer just looking for an excuse to get out of his cell by going to medical, when Harnage has only ever reported symptoms he was suffering and warranted treatment.

42. On or about June or July 2017, plaintiff was transferred back to MacDougall where he continued to report the tearing sensations in his abdomen, as being so severe as to affect his daily activities; to Naqvi, Pillai, Greene,

Furtick, Spancz-Lanis, Doyle, Bonnetti and Candelario.

43. Despite being more than, and/or nearly, two (2) years past plaintiff's surgery, each of the defendants, continued telling Harnage that there was nothing wrong, that what he was experiencing was "normal", without ever ordering any diagnostic imaging testing.

44. On or about September 2018, plaintiff was transferred to Garner where he came under the care of Valletta, Nadeau, DeBarros and Hannah.

45. On multiple occasions Harnage reported to Valletta, Nadeau, DeBarros that he was still having problems with his hernia surgical site and had been reporting it to medical staff who did nothing.

46. Valletta, without examining Harnage or ordering any diagnostic imaging testing; told Harnage it was "normal" for it to take some time to "get use to" the feel of the prosthetic mesh, and DeBarros and Nadeau barely acknowledged plaintiff's concerns.

47. Plaintiff's complaints of severe and debilitating pain, were not an aspect of getting use to the implant.

48. On or about March, 2020, plaintiff noticed a blistered appearance on the right side of his suture and navel that was approximately the size of a dime, and continued suffering from severe tearing sensations, in the same area, and throughout his abdomen generally; that were increasing in frequency.

49. Harnage immediately wrote to medical, about needing to be seen for an examination, and his numerous written requests went unanswered.

50. The blister on Harnage's abdomen grew bigger and bigger as his pain and suffering intensified in strength and frequency.

9

51. Plaintiff, desperate to be seen, wrote an Inmate Request Form to Hannah hoping for intervention and treatment.

52. Finally, on May 12, 2020, Harnage was examined by Valletta, who diagnosed Harnage as having suffered a migration of his abdominal mesh implant.

53. In discussions with Valletta, it was confirmed that Valletta believes, as Harnage reasonably believes; the mesh migration has caused a worsening separation of plaintiff's abdominal muscle and abdominal skin, with the space in between filling with fluid.

54. Valletta informed Harnage that he would need a CAT scan to fully confirm any diagnosis, so he could know exactly what was going on, how extensive the damage is and what steps are necessary to alleviate the problem.

55. However, Valletta refused to order an expedited CAT scan or to request approval of a surgical consultation, both of which could be undertaken in a safe manner, despite COVID-19, with implementation of minimal safeguards.

56. Despite this diagnosis, plaintiff has still not been sent for a CAT scan.

57. Harnage's abdomen continues to slowly fill with fluid and is becoming tighter and firmer each day, like an over inflated balloon, causing greater and more frequent tearing sensations and trauma throughout the entirety of plaintiff's abdomen, degrading his physical condition daily.

58. Plaintiff has repeatedly written to medical, Valletta, and spoken directly to Adrianne informing them of plaintiff's continuing worsening of his condition and all of his requests went unanswered and no one has sought to seek to expedite treatment.

10

59. Since, plaintiff's abdomen has more than doubled in size, and nearly tripled; affecting his daily activities.

60. On or about June 2, 2020, plaintiff's abdomen was so swollen and taught with pressure, that when Harnage experienced a violent sneeze, he suffered numerous extremely painful tearing sensations throughout his abdomen, as well as two (2) that reached a 9-10 pain score, out of 10, on the left side of his navel.

61. In both of these 2 locations, plaintiff has been able to identify, by manual palpatation, what he reasonably believes and hereby alleges are tears through his abdominal muscle wall, radiating out from his navel approximately 2 inches in length.

62. Plaintiff's belief is reasonable in that these fissures feel exactly identical to the plaintiff's original hernia fissure, prior to repair, and emanates the same constant pain only at a greater pain level.

63. Plaintiff has repeatedly written about his aggravating and worsening condition and neither Valletta, Nadeau of DeBarros has taken any action to expedite a CAT scan or surgical correction of the area.

64. DeBarros, after Harnage complained during med-line, and handed her an Inmate Request Form about his worsening condition; called Harnage to medical and, after taking Harnage's vitals; simply told Harnage he would have to wait for them to schedule the CAT scan, which, at that time; had still not even been scheduled.

65. DeBarros made no efforts to call UConn and request an expedited procedure, or e-mailed anyone to make such a request; or to inform anyone of the severity and worsening of plaintiff's condition.

11

66. Plaintiff is fully aware that the worse the condition is allowed to deteriorate before correction, the greater and more invasive the procedure necessary to correct the problem.

67. Plaintiff is extremely distraught and suffering extreme anxiety and emotional distress at defendants lackadaisical care for plaintiff's medical condition.

68. This anxiety is heightened by plaintiff's knowledge that he almost died during his original surgical repair, which encompassed about 10% of the abdominal area now involved in a stage of distress.

69. Defendants knew or should have known that Harnage would suffer harm and injury as a result of their actions or lack thereof.

70. Had defendants acted in response to plaintiff's complaints plaintiff may have been saved the migration of the mesh, the degrading separation of his right muscle and skin layers and additional herniatic trauma.

71. Plaintiff was harmed and injured as a direct and proximate cause of defendants actions, or lack thereof, including, but not limited to:
    a) plaintiff has suffered years of severe and traumatic tearing sensations, every time he twisted, bent, stooped, stretched, coughed or sneezed, and;
    b) plaintiff has suffered migration of his prosthetic mesh implant that shall require revision surgery to correct, and;
    c) plaintiff continues to suffer severe tearing sensations as his right abdomen muscle and skin layers tear apart, and;
    d) plaintiff suffers extreme pain and discomfort as his left abdomen now has 2 herniated areas that hurt constantly and suffers sharper and extremely painful tearing sensations as they continue to tear larger each time he twists, bends, stretches, coughs or sneezes, and;

e) plaintiff is and continues to suffer extreme pain and discomfort affecting his daily activities, as his abdomen continues to swell and become pressurized by fluid build-up throughout.

72. Therefore, plaintiff prays this court grant the following relief:
   a) Compensatory damages of $2,500,000.00
   b) Punitive damages of $2,500,000.00
   c) Emotional distress damages of $2,500,000.00
   d) Costs and attorney fees
   e) Injunctive relief ordering defendants to provide proper diagnostic imaging testing, proper surgical correction of the affected area, and proper and adequate post operative care; and;
   f) Such other relief as this court deems just and equitable

## Legal Claims

73. Defendants conduct in failing to listen to Harnage's complaints of a tearing sensation, for years, allowing a possibly curative condition to become a full blown mesh migration constitutes as deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

74. Defendants conduct in failing to take immediate and expedited diagnostic and corrective measures to ascertain the extent and required remedy for plaintiff's migrated mesh, and allowing pressurized fluid build-up causing potential two new hernias of the abdominal muscle, and possibly more; constitutes as deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

## Jurisdiction

75. This court has Jurisdiction pursuant to 42 U.S.C. §1983 and C.G.S. 52-1, as well as 42 U.S.C § 12131, 12132; 29 U.S.C. § 206(z)(b) and §794; 28 U.S.C. §§ 1331, 1343(a)(3), 1391(b)(2), §§ 2201, 2202, 2283, 1331(a), 1367, 1361 and §1651.

## Statement of Previous Actions

76. Plaintiff hereby states that he has not brought any past actions on this same set of facts. The plaintiff does have an action pending involving his original hernia and it's corrective procedure titled *Harnage vs Lightner*, 3:16-cv-0263 (AWT).

## Statement of Previously Dismissed Actions or Appeals

77. The plaintiff hereby states he has received "Three-Strikes", and files this complaint pursuant to the exception of 28 U.S.C. §1915(g) for claims of "imminent serious physical injury", premised on:

a) plaintiff is suffering daily ongoing serious physical injury as his muscle and skin layers separate, and;

b) as Harnage's abdomen swells with fluid and becomes highly pressurized, and;

c) plaintiff suffers from imminent physical injury, including, but not limited to;

   1. the next daily increase in muscle and skin separation, and;
   2. the next daily increase in abdominal fluid and pressure build-up, and.
   3. the next daily increase in the size, breadth and length of Harnage's 2 new herniated abdominal sections, and others unknown, and;
   4. the imminent infliction of new herniated abdominal muscle tears as Harnage's abdomen pressure increases and plaintiff twists, bends, squats, stoops, coughs or sneezes.

## Declaration Under Penalty of Perjury

78. I hereby declare under penalty of perjury that I am the plaintiff in the above complaint, that I have read the foregoing and the contents thereof are true to the best of my knowledge and belief and to those facts alleged upon information and belief I believe them to be true. I understand that if I lie in this complaint I may be prosecuted for perjury and punished with as much as Five (5) years in prison and/or fined up to $250,000.00.

Executed this 5th day of June, 2020
at Newtown, Connecticut

By _____
James A. Harnage #149472
50 Nunnawauk Rd.
Newtown, CT. 06470

E-Filing
2 of 4